In the Matter of the Application of JOHN SEINFELD, Petitioner, Respondent, against HARRIS H. MURDOCK and Others, Constituting the Board of Standards and Appeals of the City of New York, Created by Chapter 503 of the Laws of 1916, Appellants.

First Department, June 7, 1940.

*James Hall Prothero* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellants.

*Julius Hahn,* for the respondent.

UNTERMYER, J. The board of standards and appeals of the city of New York appeals from an order of the Special Term which annuls a determination of the board refusing to vary the Amended Building Zone Resolution, under section 21, by allowing the petitioner to convert the basement of his apartment house, situated in a residential district, so as to accommodate a series of stores along its ground floor frontage on the Grand Concourse.

The premises involved are No. 2095 Grand Concourse, borough of Bronx, situated on the west side of the avenue between One Hundred and Eightieth and One Hundred and Eighty-first streets. The plot has a frontage of approximately 101 feet on the concourse and is approximately 102 feet in depth. The Special Term annulled the determination of the board upon the ground that unnecessary hardship would result to the petitioner if the variance were not granted.

Although it may be true, as the petitioner asserts, that the apartment house is a losing enterprise even if the variance is allowed and that it will lose even more heavily if it is denied, more than this must appear to warrant the exercise of " the delicate jurisdiction to vary, on the basis of unnecessary hardship, the applicable provision of the zoning resolution." (*Y. W. H. Assn.* v. *Board of Standards & Appeals*, 266 N. Y. 270.) Indeed, the principal theory on which the order of the Special Term is attempted to be sustained is that the section in which the petitioner's property is situated is already dedicated to business rather than to residence, due in part to pre-existing business uses and partly to variances granted either by the board or by the courts. That contention requires consideration of the character of the uses to which the westerly side of the Grand Concourse is devoted between Burnside avenue and One Hundred and Eighty-eighth street.

From One Hundred and Eighty-first street (which is the first street running east and west to the north of the petitioner's premises) to One Hundred and Eighty-eighth street the area is devoted predominantly to business. From One Hundred and Eightieth street (which is the first street running east and west to the south of the petitioner's premises) to Burnside avenue the area is predominantly, if not exclusively, residential. The petitioner's prop-

erty, located near the center of the block between One Hundred and Eightieth and One Hundred and Eighty-first streets, thus lies between an area of business to the north and a residential area to the south.

The block in which the petitioner's property is situated consists of an apartment house at the corner of One Hundred and Eighty-first street, as to which a variance allowing stores on the ground floor was granted by the board on account of the peculiar situation affecting those premises. South of that apartment house there is a narrow plot of land with respect to which the board refused to grant a variance. The Supreme Court, however, in a previous proceeding, annulled the determination of the board and made an order granting the variation, from which no appeal was taken. The petitioner's property is south of the premises last referred to and south of the petitioner's property is an apartment house, which stands at the corner of One Hundred and Eightieth street. Although the ground floor of that apartment house is now used for business, the use is illegal and can be prohibited, no variance ever having been granted by the board.

It thus appears that the petitioner's property constitutes the dividing line between a business area to the north and a residential area to the south. The board has concluded that the trend of business extending southerly along the westerly side of the Grand Concourse should be arrested before it further invades a strictly residential section. Since the line of demarcation must be drawn at some point, we cannot say that the board has acted arbitrarily or capriciously in placing it where it did. If it should permit business as far as the northerly corner of One Hundred and Eightieth street the owners of property on the southerly side of that street could, with equal justification, complain that they were subjected to hardship and were the victims of injustice. If the board should allow the extension as far as Burnside avenue it would thereby permit the further encroachment of business uses in a neighborhood which, though limited in area, is almost exclusively residential. Under these circumstances it cannot be held that the action of the board, which is the agency to which the power to decide such question has primarily been delegated, in dividing the business from the residential area near the center of the block, is either unreasonable or arbitrary and, therefore, warrants interference by the court.

The order should be reversed, with twenty dollars costs and disbursements, and the petition dismissed.

O'MALLEY and DORE, JJ., concur; MARTIN, P. J., and TOWNLEY, J., dissent.

Order reversed, with twenty dollars costs and disbursements, and the petition dismissed.